## STATE v NEBE

Ohio Appeals, 8th Dist, Cuyahoga Co

No. 16369.   Decided Dec. 20, 1937

Frank T. Cullitan, Prosecuting Attorney, Cleveland, Charles J. McNamee, Asst. Prosecuting Attorney, Cleveland, Neal W. McGill, Asst. Prosecuting Attorney Cleveland, for plaintiff-appellee.

Howell Leuck, Cleveland, and William M. Durkin, Cleveland, for defendant-appellant.

MONTGOMERY, PJ, SHERICK and LEMERT, JJ, (5th Dist) sitting by designation.

## OPINION

### By SHERICK, J.

John H. Nebe was twice indicted for the crime of bribery. Each indictment was upon two counts. Upon trial had, he was found not guilty on counts two and four and guilty as charged on counts one and three. Trial was had upon the two indictments as a consolidated cause. Inasmuch as these two counts are, as to form, drafted in identical language, and the first ground of claimed error applies equally to one as to the other our reference hereinafter made with respect to the Yerman matter will be understood to apply with equal force to the Mochalski or third count.

The indictment in substance charged that, during a period from March 31st, 1930 to April 1st, 1931, Nebe violated §12823 GC; that as a police officer during said period he "unlawfully and corruptly solicited and accepted from Tony Yerman various sums of money the exact amounts and the specific times at which said sums were so solicited and accepted" are unknown but that the aggregate sum was approximately $150.00 to influence him with respect to his official duties in the enforcement of the then existing liquor laws.

This count of the indictment was attacked by demurrer, motion to quash and motion for a bill of particulars, all of which were denied by the trial court. It is urged that in so doing the court erred. The principal upon which this claimed error is predicated rests upon the old rule that an indictment which charges that two or more offenses in one count is bad for duplicity; and that, since the crime of bribery is complete when the money is solicited and accepted, that several payments on separate occasions constitute separate crimes and the fact that these payments were made by agreement creates no difference in the rule contended for. We are cited to convincing authorities which have applied this rule. The fact is, however, that all antedate the enactment of the recent crimes act. Before proceeding further it will be pointed out that Nebe is charged with and could have been convicted of no other crime save that of bribery.

In State v Peters, 112 Oh St 242, 262, (1925) the court said:

"The subject of duplicity is a growth of the common law which has never been made the subject-matter of legislation in Ohio. The courts of other states have in some re-

ported cases gone to unreasonable lengths in requiring separate counts stating different elements of a single offense, but it must be stated in justice to the Supreme Court of Ohio that its rulings on the subject of duplicity in criminal pleadings have been quite conservative and based upon common sense doctrines. The entire subject of duplicity in criminal pleading is for the most part involved in technicalities calculated to serve persons accused of crime in their efforts to escape by technicalities much more than it is calculated to aid in promoting substantial justice."

In 1929, 113 O. L. 168, the Legislature of Ohio attempted to and did brush aside certain of the technicalities of the common law which had repeatedly been invoked to hamstring the administration of criminal justice and enacted new rules of criminal procedure among which is found §13437-27 GC which prescribes in part that:

"No indictment or information shall be quashed, set aside or dismissed for any one or more of the following defects: (First) That there is a misjoinder of the parties accused; (Second) That there is a misjoinder of the offenses charged in the indictment or information, or duplicity therein; (Third) That any uncertainty exists therein. If the court be of the opinion that the first and second defects or either of them exists in any indictment or information, it may sever such indictment or information into separate indictments or informations or into separate counts as shall be proper."

It will be noted that the statute prescribes that "no indictment shall now be quashed, set aside or dismissed for duplicity." And it further prescribes that the court "may," if duplicity exists, cause separate counts to be set forth. It is equally clear that this is not a mandatory requirement but is such as vests ▮▮▮▮▮ a discretionary power in the trial court. If it were mandatory in character the statute would hardly do anything more than re-state the common law heritage. This evidently was not the legislative intent.

As previously indicated, bribery was the only crime charged. Without question each separate solicitation and acceptance might have been separately charged. ▮▮▮▮▮ It rather seems to us that the possibility of but one conviction rather than many was of advantage to the accused; and it appeals with equal certainty that Nebe could not hereafter be charged with a like crime with Yerman during the period of time covered by the indictment.

With respect to the defendant's right to a bill of particulars it is determined that the indictment definitely apprised him of the nature of the offense of which he stood charged. It is stated in **State v Whitmore, 126 Oh St 381,** decided in 1933, that:

"10. 'Certainty to a common intent' means that 'a criminal charge should be preferred with certainty and precision as will reasonably apprise the party charged of that which he may expect to meet and be required to answer, and so that the court and jury may know what they are to try and the court may determine without unreasonable difficulty what evidence is admissible; also that the record to be made will be sufficiently definite to make it clear of what the party has been put in jeopardy.' (**Dubrul v State, 80 Oh St 52, approved** and followed)."

If this was the law prior to the recent act on criminal procedure, surely such is now the law by virtue of §13437-6 GC which recites in its concluding paragraph:

"* * * Provided that the prosecuting attorney, if reasonably requested by the defendant, or upon order of the court, shall furnish a bill of particulars setting up specifically the nature of the offense charged. (113 v 164 ch. 16, §6, eff. July 21, 1929)."

Inasmuch as the indictment clearly stated the offense charged, we do not see the propriety of a demand for a bill of particulars. Such could have served ▮▮▮▮▮ no purpose other than a disclosure of the state's evidence to which the defendant was not then entitled. The trial court did not abuse its discretion in the matter.

See People v Lloyd, 304 Ill. 23.
People v Weil, 243 Ill. 208.
Evans v United States 163 U. S. 584.
Sherrick v State, 167 Ind. 345.
State v McCollom, 105 Atl. 739.

The defendant complains also of error in that the trial court permitted the state to cross-examine the appellant upon an immaterial matter. One Frances Bejcek was offered as a witness by the state. Her testimony was withdrawn from the jury's consideration for the reason that there was no direct evidence that Nebe had solicited

and accepted money from the witness' husband. Thereafter Nebe was asked upon cross-examination about bootleggers in the 15th prec rec. In reply Nebe stated that there were from two to three hundred in this precinct, most of whom he knew. He knew Mrs. Bejcek as such. He had arrested her He was asked if he had not called upon her husband when he was ill. His answer was "no." We find  no error in such an examination. It establishes his acquaintance with bootleggers. It all had a bearing on the credibility of Nebe's testimony. It is also claimed that the cross-examination of defense witness, Dewey Abbey, was improper. He was called for the purpose of impeaching the state's witness Yerman. Upon cross-examination he was asked if he had not searched Yerman's place accompanied by one Shoemaker. It was developed that he had talked to Shoemaker after being subpoenaed and that Shoemaker was under indictment for a like offense. The court admitted this evidence on the theory that it related to the motive which prompted Abbey to so testify and for no other purpose. There was no error in so doing.

The testimony of two character witnesses was taken from the jury's consideration for the very proper reason that upon cross-examination it was conclusively established that they could not qualify. They testified that Nebe's reputation for certain traits of character was good. The subsequent examination disclosed that they did not possess the means of knowing his reputation. This evidence was therefore properly taken from the jury.

The claim of error alleged to be present in the concluding argument of the state's counsel is but another example of provoked reply due to statements made by the defense in its argument to the jury. It is well established that when such is caused by such a provocation that it is not error but must be considered as expected refutation of what was invited. This practice is not approved of and is only countenanced by the inducing circumstances.

It is the conclusion of this court that the verdict and judgment is not contrary to law and must be affirmed, which is done accordingly.

MONTGOMERY, PJ, and LEMERT, J, concur.